SCHOOL COMMITTEE OF LOWELL *vs.* PHANNA KEM ROBISHAW.

Middlesex. January 5, 2010. - May 4, 2010.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.

*School and School Committee,* Termination of employment, Arbitration. *Public Employment,* Termination. *Arbitration,* School committee, Authority of arbitrator, Award, Judicial review. *Public Policy.*

Discussion of the scope of judicial review of an arbitration decision concerning the dismissal of a teacher with professional teacher status. [660-661]

In a civil action to vacate an arbitrator's award of reinstatement of a teacher, the Superior Court judge erred in concluding that the arbitrator exceeded his authority, where the judge was not free to reject the arbitrator's findings or legal conclusion that if the superintendent of the teacher's school district chose to base her determination of the teacher's fluency in English on classroom observation and assessment, then the underlying assessment must have been conducted in a procedurally appropriate manner and must be based on the use of substantively valid standards [661-662]; moreover, although the arbitrator acted beyond his authority in declining to accept, without additional indicia of reliability, the results of a fluency test that had been approved by the Commissioner of Education, the arbitrator's independent basis of decision (i.e., that the test results must be viewed as an unreliable indicator of the teacher's fluency in English due to her medical condition at the time the test was administered) was not open for judicial review and, in any event, was supported by evidence in the record [662-664]; finally, the judge erred in concluding that the arbitrator's award violated public policy, where the arbitrator's factual finding that the school district had not met its burden of demonstrating that the teacher could not speak English fluently rendered moot any consideration of the application of the public policy exception to the award at issue [664-665].

CIVIL ACTION commenced in the Superior Court Department on January 16, 2007.

The case was heard by *Dennis J. Curran,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Srinivas Ramineni (Christy C. Fujio* with him) for the defendant.
*James P. Hall (Raymond T. Weicker* with him) for the plaintiff.

*James L. Messenger, Ruth T. Dowling, & Stephanie A. Bruce,* for Asian American Legal Defense and Education Fund & others, amici curiae, submitted a brief.

BOTSFORD, J. An arbitrator found that the school committee of Lowell (school committee) did not establish just cause to terminate the employment of Phanna Kem Robishaw, a first-grade teacher dismissed for failure to demonstrate satisfactory English fluency. Thereafter, a judge in the Superior Court granted the school committee's application to vacate the arbitrator's award pursuant to G. L. c. 150C, §§ 11 and 12, concluding that the arbitrator's decision exceeded his authority and violated public policy. Robishaw appealed, and we transferred the case on our own motion. Applying the well-settled limitations on judicial review of an arbitrator's decision, we conclude that the arbitrator's award in this case should be affirmed.[1]

*Background.* a. *English fluency requirement.* In November of 2002, Massachusetts voters passed "Question 2" by initiative petition, rewriting G. L. c. 71A, entitled "English Language Education in Public Schools." G. L. c. 71A, as appearing in St. 2002, c. 386, § 1. Section 4 of G. L. c. 71A requires that "all children in Massachusetts public schools shall be taught English by being taught in English and all children shall be placed in English language classrooms." Section 2 (*b*) defines an "English language classroom" as "a classroom in which the language of instruction used by the teaching personnel is overwhelmingly the English language, and in which such teaching personnel are fluent and literate in English."

On March 27, 2003, the Commissioner of Education (commissioner) issued a memorandum (March 27 memorandum, or memorandum) to school superintendents and charter school leaders, explaining the new law. The memorandum required that, beginning with the 2003-2004 school year, every superin-

---

[1] We acknowledge the amicus brief filed by the Asian American Legal Defense and Education Fund; Allies Working with APA Youth Network; American Civil Liberties Union of Massachusetts; Boston Asian Youth Essential Service; Children's Law Center of Massachusetts, Inc.; Community Change, Inc.; Lawyers' Committee for Civil Rights Under Law of the Boston Bar Association; Massachusetts Center for Collaborative Education; Massachusetts Immigrant and Refugee Advocacy Coalition; Multicultural Education, Training & Advocacy, Inc.; National Lawyers' Guild, Massachusetts Chapter; Southeast Asia Resource Action Center; and Union of Minority Neighborhoods.

tendent and charter school head sign an assurance verifying the English fluency and literacy of all teachers in English language classrooms in his or her district or school. It defined "[f]luency" as "oral proficiency in English that consists of comprehension and production," and further defined "[p]roduction" as "accurate and efficient oral communication using appropriate pronunciation, intonation, grammar, and vocabulary in an interactive professional context."[2]

The March 27 memorandum outlined four fluency assessment methods: (1) classroom observation and assessment by a teacher's supervisor, principal, or superintendent; (2) interview and assessment by a supervisor, principal, or superintendent; (3) a teacher's demonstration of fluency by achieving an acceptable score on a test accepted by the commissioner; and (4) an alternative method developed by the superintendent and accepted by the commissioner. The memorandum then stated that, after researching testing options, the Department of Education (department) recommended the American Council on the Teaching of Foreign Languages (ACTFL) oral proficiency interview (OPI) test and deemed any score above the "advanced-mid" level "acceptable . . . for teachers in Massachusetts English language classrooms." The memorandum stated in bold print that a "test is needed only in cases where the teacher's English fluency is not apparent through classroom observation and assessment or interview and assessment," and reiterated that "[o]nly those teachers for whom it is not possible to decide that they reach, at a minimum, the Advanced-Mid level should be referred for the OPI assessment." An attachment to the March 27 memorandum incorporated the ACTFL proficiency guidelines that contained "descriptors" of ten speaking levels — of which the "advanced-mid" level was the third — for use "as guides for district officials to use when deciding if a teacher meets or does not meet the oral proficiency requirement of Question 2." The commissioner also recommended in the memorandum that "school officials who will be making the fluency determinations

---

[2]Phanna Kem Robishaw's "literacy" in English is not in issue here. The commissioner's memorandum of March 27, 2003 (March 27 memorandum), explained that "[t]eachers who possess a Massachusetts teaching license or vocational approval fulfill Question 2's requirement for literacy in English." As discussed below, Robishaw held several Massachusetts teaching licenses.

review and discuss the descriptors together to ensure consistent application."[3]

To comply with the commissioner's instructions set out in the March 27 memorandum — instructions that were subsequently codified in part as 603 Code Mass. Regs. § 14.05 (2003) (see note 3, *supra*) — the school committee developed a policy for the 2003-2004 school year requiring fluency testing for all teachers who spoke a first language other than English. The policy exempted from the fluency testing requirement any such teacher who provided documentation that he or she had attended United States mainland schools in which the teaching was in English for at least six years during his or her kindergarten through grade twelve education[4] and any teacher who passed the locally administered "SPEAK" test.[5] The policy required teachers who did not qualify for the exemption to take the "SPEAK" test and, if they did not receive a score of fifty-five points or higher, to take the department-approved OPI test.

b. *Robishaw's dismissal.* Robishaw, a first-grade teacher at the Greenhalge School in Lowell, began teaching in the Lowell public schools in 1992. Robishaw was born in Cambodia in 1955 and came to the United States as a refugee after she escaped the Khmer Rouge regime. She was one of five teachers of Cambodian birth at Greenhalge, where, as of 2002, the Cambodian student enrollment was close to fifty per cent. Robishaw held several separate teaching licenses issued by the department, and these licenses collectively qualified her to teach an elementary school curriculum in mainstream, bilingual, and special education settings, as well as to teach Cambodian. Before 2002, Robishaw's annual teaching evaluations by her school's principals had been uniformly positive, rating her teaching as "satisfactory," the highest rating available.

---

[3]In 2003, subsequent to the distribution of the commissioner's March 27 memorandum, the Department of Education (department) promulgated regulations to implement G. L. c. 71A; the regulations in part incorporated the substance of the March 27 memorandum. See 603 Code Mass. Regs. § 14.05 (2003). We discuss the regulations *infra.*

[4]Robishaw did not qualify for this exemption.

[5]The school committee's fluency policy described the "SPEAK" test as an adult test of oral English communication skills scored by trained raters from outside the district who did not know the test takers. It does not appear from the record that the commissioner ever approved the SPEAK test.

In October, 2002, a new principal at the Greenhalge School expressed concern to the superintendent of the Lowell public schools (superintendent) about several teachers' English proficiency, including Robishaw's. At the superintendent's suggestion, the principal evaluated those teachers based on their "instructional abilities in the classroom." The principal's evaluation of Robishaw began in October, 2002, and continued through January, 2003, when she gave Robishaw an "unsatisfactory" over-all performance rating. While the principal cited Robishaw's "inability to orally communicate effectively," she did not explicitly use the evaluation to assess Robishaw's English fluency. Because the principal began the evaluation before the passage of Question 2 and concluded the evaluation before the issuance of the commissioner's March 27 memorandum, she did not use or have knowledge of the ACTFL speaking levels (including the advanced-mid level) referenced in and attached to the memorandum.

On February 3, 2003, following a January meeting with her principal about the evaluation, Robishaw experienced symptoms of posttraumatic stress disorder and took a medical leave of absence from her teaching position. In March, 2003, Robishaw wrote the assistant superintendent of the Lowell public schools, seeking to postpone taking the SPEAK test because of her medical condition and the medications she was taking. The assistant superintendent declined Robishaw's request, and in the spring of 2003, Robishaw took and failed both the SPEAK and OPI tests while still on medical leave.

In June, 2003, the superintendent informed Robishaw by letter that if she failed to provide evidence of a passing score on the OPI assessment on or before August 14, 2003, the superintendent would dismiss her. Robishaw did not do so. In August, the superintendent sent Robishaw another letter stating her intent to dismiss her "for cause pursuant to [G. L. c. 71, § 42,] for inefficiency and incompetency based upon fluency in the English language." In September, 2003, the superintendent held a hearing at Robishaw's request and, after reviewing medical documents and other evidence, decided not to dismiss Robishaw at that time and to extend her medical leave.

Robishaw continued on medical leave through the 2003-2004 and 2004-2005 school years. In June, 2005, Robishaw wrote the

superintendent to state that she was ready to return to her teaching position and intended to do so that August. In July, however, the superintendent sent Robishaw another letter of intent to dismiss her effective September, 2005. The superintendent stated that, using the advanced-mid level described in the commissioner's March 27 memorandum, she found Robishaw insufficiently fluent in English to meet State requirements. The superintendent based this conclusion on the principal's evaluation report, signed in January, 2003, and Robishaw's SPEAK and OPI test scores.

In September, 2005, Robishaw requested and received a review hearing with the superintendent. See G. L. c. 71, § 42.[6] At the review hearing, Robishaw was represented by an attorney and testified on her own behalf. Robishaw's husband and her treating psychologist also testified on her behalf. Following the review hearing, the superintendent dismissed Robishaw based on the latter's "demonstrated level of English fluency and the best interests of students."[7] The superintendent cited as grounds Robishaw's failing SPEAK and OPI assessment scores and the principal's October, 2002, to January, 2003, observations, as well as the superintendent's own observation of Robishaw's fluency level at the review hearing.

In June, 2006, Robishaw invoked her right — provided by statute, see G. L. c. 71, §§ 41 and 42,[8] and under the Lowell

---

[6]The second paragraph of G. L. c. 71, § 42, provides in relevant part:

"A teacher who has been teaching in a school system for at least ninety calendar days shall not be dismissed unless he has been furnished with written notice of intent to dismiss and with an explanation of the grounds for the dismissal in sufficient detail to permit the teacher to respond and documents relating to the grounds for dismissal, and, if he so requests, has been given a reasonable opportunity within ten school days after receiving such written notice to review the decision with the principal or superintendent, as the case may be, and to present information pertaining to the basis for the decision and to the teacher's status. The teacher receiving such notice may be represented by an attorney or other representative at such a meeting with the principal or superintendent. . . ."

[7]At the subsequent arbitration hearing described in the text, *infra*, the superintendent testified that "English language fluency . . . was the sole reason for [Robishaw's] dismissal."

[8]General Laws c. 71, § 41, provides that "a teacher . . . who has served in the public schools of a school district for the three previous consecutive

·teachers' collective bargaining agreement — as a professional status teacher to seek arbitration to review the dismissal. After twelve days of hearings, the arbitrator issued his decision in January, 2007. The arbitrator framed the issue as whether there was just cause to terminate Robishaw, and found the matter arbitrable. While the arbitrator admitted in evidence Robishaw's SPEAK and OPI test results, he ultimately declined to consider them substantively. He concluded that to do so would violate Robishaw's due process rights because the test graders had not been available for cross-examination. The arbitrator also deemed the results unreliable because Robishaw had taken the tests while on leave for a medical condition that "negatively affected her ability to demonstrate her English language proficiency/ fluency." Turning to the principal's evaluation of Robishaw in 2002 and early 2003, the arbitrator found that it constituted an improper basis for dismissal, as it was "not informed by an awareness of the standard or benchmark which defines sufficient fluency" and neither the "evaluation instrument nor [the principal] informed Ms. Robishaw that her 'fluency' was being observed and/or evaluated." Additionally, the arbitrator deemed the superintendent's conclusions about Robishaw's fluency based on Robishaw's speech at the 2005 review hearing an "invalid basis to support her dismissal." He found that G. L. c. 71, § 42, does not allow a superintendent to expand the grounds of dismissal during the review hearing itself and, in any case, the superintendent did not notify Robishaw that she intended to use that hearing to assess fluency. Finally, the arbitrator found Robishaw's retention in the students' best interest due to her life history as a survivor of the Pol Pot regime in Cambodia and her ability to serve as a role model for young people. The arbitrator concluded that the school committee did not establish just cause for Robishaw's dismissal and ordered her reinstated with back pay and benefits to August 1, 2005.

school years . . . shall be entitled to professional teacher status as provided in [G. L. c. 71, § 42]." Under § 42, a teacher with professional teacher status "shall not be dismissed except for inefficiency, incompetency, incapacity, conduct unbecoming a teacher, insubordination or failure on the part of the teacher to satisfy teacher performance standards developed pursuant to [G. L. c. 71, § 38,] or other just cause. A teacher with professional teacher status may seek review of a dismissal decision within thirty days after receiving notice of his dismissal by filing a petition for arbitration with the commissioner."

The school committee filed an action in the Superior Court, seeking to vacate the arbitrator's award under G. L. c. 150C, §§ 11 and 12, claiming, among other grounds, that the arbitrator exceeded his authority. After hearing, the motion judge vacated the arbitrator's award. The judge determined that under *School Comm. of Lowell* v. *Vong Oung*, 72 Mass. App. Ct. 698 (2008) (*Vong Oung*), the school committee's claim that the arbitrator wrongly excluded Robishaw's test results lay beyond the scope of judicial review as an alleged error of fact or law. However, based in part on his own opinion of Robishaw's fluency in English, formed from listening to a tape recording of her 2003 SPEAK test, the judge concluded that the arbitrator exceeded his authority by issuing an award that contravened both State law and public policy.

*Discussion.* a. *Scope of judicial review.* General Laws c. 71, § 42, authorizes a teacher with professional status to seek review of a decision to dismiss her by arbitration, and places the burden on the school committee to prove the "just cause" that served as grounds for dismissal.[9] Here, the superintendent cited lack of English fluency as the "just cause" for terminating Robishaw's employment. Section 42 also dictates that the "arbitral decision shall be subject to judicial review as provided in [G. L. c. 150C]." See *School Dist. of Beverly* v. *Geller*, 435 Mass. 223, 228 (2001) (*Geller*) (Cordy, J., concurring). Under G. L. c. 150C, § 11, a judge in the Superior Court "shall vacate" an arbitrator's award on a party's application if, among other enumerated grounds, "the arbitrators exceeded their powers or rendered an award requiring a person to commit an act or engage in conduct prohibited by state or federal law." Absent proof of one of the grounds specified in G. L. c. 150C, § 11, a reviewing court is "strictly bound by the arbitrator's factual findings and conclusions of law, even if they are in error." *School Comm. of Pitts-*

---

[9] The fifth paragraph of G. L. c. 71, § 42, provides:

> "At the arbitral hearing, the teacher and the school district may be represented by an attorney or other representative, present evidence, and call witnesses and the school district shall have the burden of proof. In determining whether the district has proven grounds for dismissal consistent with this section, the arbitrator shall consider the best interests of the pupils in the district and the need for elevation of performance standards."

*field* v. *United Educators of Pittsfield*, 438 Mass. 753, 758 (2003). See *Lynn* v. *Thompson*, 435 Mass. 54, 61 (2001), cert. denied, 534 U.S. 1131 (2002) ("we are strictly bound by an arbitrator's findings and legal conclusions, even if they appear erroneous, inconsistent, or unsupported by the record"). The court may ask only whether the arbitrator "exceeded his scope of reference, acted against clearly defined public policy, or ordered conduct prohibited by State or Federal law." *School Comm. of Pittsfield* v. *United Educators of Pittsfield, supra* at 759, quoting *Duxbury* v. *Duxbury Permanent Firefighters Ass'n, Local 2167*, 50 Mass. App. Ct. 461, 464 (2000).

b. *Analysis.* As stated, the judge vacated the arbitrator's award on two independent grounds: the award was contrary to law and in violation of public policy. We consider each separately.

(i) *Contrary to law.* The judge ruled that the arbitrator's award required the superintendent to act contrary to law because it precluded her from determining Robishaw's fluency (or lack thereof) based on the assessment of Robishaw's principal. The judge reasoned:

> "[T]he Arbitrator's decision prevents the Superintendent from relying on the Principal's observations of teachers' fluency. This result is not merely inconsistent with the law; it is contradictory. Under the [department's] regulations, the Superintendent 'shall' rely on the Principal's observations of fluency, but the Arbitrator concluded that the Principal's opinion as to the defendant's lack of fluency was invalid because the Principal was unfamiliar with linguistics testing. . . . The arbitration award directs a result contrary to the express terms of the law. See 603 Code Mass. Regs. § 14.05(3)(a). . . .[10] Therefore, the arbitration award exceeds the Arbitrator's authority and must be vacated under G. L. c. 150C, § 11 (*a*) (3)."

The judge's conclusion was in error. Contrary to his apparent view, neither 603 Code Mass. Regs. § 14.05(3)(a) nor anything

---

[10]Title 603 Code Mass. Regs. § 14.05(3)(a) provides: "For purposes of the assurance required by 603 [Code Mass. Regs. §] 14.05(1), a teacher's fluency in English shall be determined through one or more of the following methods: . . . classroom observation and assessment by the teacher's supervisor, principal or superintendent . . . ."

in the governing statute, G. L. c. 71A, requires the superintendent to rely on a principal's assessment of a teacher's English fluency regardless of the substantive or procedural validity of that assessment. The judge failed to take into account the arbitrator's factual findings that the principal's evaluations of Robishaw were "not informed by an awareness of the standard or benchmark [prescribed in the commissioner's March 27 memorandum] which defines sufficient fluency" and, moreover, that neither the "evaluation instrument nor [the principal] informed Ms. Robishaw that her 'fluency' was being observed and/or evaluated in the 2002-2003 evaluation process." Assuming, as we must, the correctness of these findings, the arbitrator's decision did not require the superintendent to violate 603 Code Mass. Regs. § 14.05(3)(a). Rather, the decision instructed in substance that if the superintendent chooses to base her determination of a teacher's English fluency for purposes of 603 Code Mass. Regs. § 14.05(1) (see note 10, *supra*) on "classroom observation and assessment," § 14.05(3)(a), the underlying classroom assessment must have been conducted in a procedurally appropriate manner and must be based on the use of substantively valid standards. If it was not, the superintendent's fluency determination need not be accepted. The judge was not free to reject the arbitrator's findings or his legal conclusion.

We turn next to Robishaw's SPEAK and OPI test scores. As previously indicated, the judge did not rest his decision to vacate the award on the arbitrator's failure to consider those scores, concluding that the school committee's "contention that the Arbitrator wrongly excluded [Robishaw's] test scores 'lie[s] beyond the scope of judicial review.' " This determination was also incorrect. Although the scope of review under G. L. c. 150C, § 11, is "restrictive in not permitting reversal based on an arbitrator's legal errors," *Goncalo* v. *School Comm. of Fall River*, 55 Mass. App. Ct. 7, 10 (2002), a reviewing court may reverse an arbitrator's decision where the arbitrator exceeds his authority by disregarding the governing law. See *Geller*, 435 Mass. at 231 (Cordy, J., concurring) ("Having found that Geller engaged in serious misconduct that [G. L. c. 71, § 42,] specifically identifies as proper grounds for dismissal, the arbitrator proceeded to apply an additional 'just cause' analysis . . . . In doing so he ignored the plain words and import of the statute.

In essence, he substituted his own judgment . . . and thereby acted beyond his authority'').

Pursuant to the express authority granted it by G. L. c. 69, § 1B, the department promulgated 603 Code Mass. Regs. §§ 14.00 (2003) to implement G. L. c. 71A, the English Language Education in Public Schools Act. Thus, 603 Code Mass. Regs. § 14.05(1), implementing G. L. c. 71A, § 2 (*b*), requires all school district superintendents to provide annually a written assurance that teachers in English language classrooms are literate and fluent in English. And in further implementation of the same statute, 603 Code Mass. Regs. § 14.05(3)(c) provides: "For purposes of the assurance required by 603 [Code Mass. Regs. §] 14.05(1), a teacher's fluency in English shall be determined through one or more of the following methods: . . . the teacher's demonstration of fluency in English through a test accepted by the [commissioner] . . . ." As stated in the commissioner's March 27 memorandum, the commissioner "accepted" the OPI test, designated it as the approved test by which a teacher could demonstrate her English fluency pursuant to 603 Code Mass. Regs. § 14.05(3)(c), and further provided that with respect to test results, "the [department] has determined that levels 1 (Superior), 2 (Advanced High), and 3 (Advanced Mid) [on the OPI test] are acceptable levels for teachers in Massachusetts English language classrooms."

The regulation at issue, 603 Code Mass. Regs. § 14.05(3)(c), promulgated pursuant to an express grant of authority by the Legislature, see G. L. c. 69, § 1B, has the force of law. See, e.g., *Kenney* v. *Commissioner of Correction*, 393 Mass. 28, 33 (1984); *Purity Supreme, Inc.* v. *Attorney Gen.*, 380 Mass. 762, 768 (1980). The arbitrator was obligated to accept the OPI test as the department's approved test under § 14.05(3)(c), and further to accept the department's designation of the "advanced-mid" level on this test as the applicable standard for acceptable fluency. The undisputed evidence admitted at the arbitration hearing was that Robishaw had taken the OPI test and had received a score of "intermediate high," which is below the threshold advanced-mid level. In concluding that he would not accept the OPI test results because none of the test graders or raters was available for cross-examination, the arbitrator exceeded his authority by declining to accept that test or, more

particularly, the results of that test, without additional indicia of reliability. In effect, the arbitrator "ignored the plain words and import of the [regulation]" and thereby acted beyond his authority. *Geller*, 435 Mass. at 231 (Cordy, J., concurring).

Nevertheless, the error does not alter the result in this case. The arbitrator rested his decision on the independent ground that both the SPEAK and the OPI test results must be viewed as an unreliable indicator of Robishaw's English fluency in the particular circumstances here. He found on the medical evidence presented — which included the testimony of Robishaw's treating psychologist — that "from January through at least August 2003 and beyond, . . . Robishaw's medical condition negatively affected her ability to demonstrate her English language proficiency/fluency, and hence any tests taken during that time cannot be viewed as a valid indicator of that ability." This factual determination is not open for our review and, in any event, is supported by the evidence in the record. Robishaw's treating psychologist testified at the arbitration hearing that, in January, 2003, Robishaw experienced depression and symptoms of posttraumatic stress disorder, the latter of which likely stemmed from the trauma she experienced in Cambodia and was reactivated by the stressful school situation. The psychologist opined that Robishaw's depression and anxiety would likely inhibit her test-taking ability. In addition to this testimony, the arbitrator considered an August 8, 2003, letter from the same psychologist indicating that Robishaw's condition had worsened and did not allow a retest at that time.

(ii) *Violation of public policy.* This court has recognized a narrow public policy exception to the usual deference we accord an arbitrator's award. That exception applies only where an employee's conduct implicates a well-defined, dominant, public policy ascertained by reference to specific law or legal precedent; the conduct is integral to the employee's duties; and such conduct would require an employee's dismissal. *Geller*, 435 Mass. at 237-238 (Ireland, J., concurring). See *Bureau of Special Investigations* v. *Coalition of Pub. Safety*, 430 Mass. 601, 604-605 (2000).

Here, the judge determined that "(1) the proper instruction of students is a clearly defined public policy; (2) English fluency

is integral to the teaching profession; (3) reinstatement of [Robishaw] would offend the goals of Massachusetts education law; and (4) the Superintendent's inability to assure [Robishaw's] fluency required [her] dismissal from teaching in an English-speaking classroom." The arbitrator, however, made a factual finding that the school committee failed to meet its burden of establishing that Robishaw could not speak English fluently. We are bound by this determination and, therefore, "need not parse the application of the public policy exception to such a scenario, because it is a factual scenario that the arbitrator expressly determined had not been proved." *Lynn* v. *Thompson*, 435 Mass. 54, 65 (2001) (where city terminated police officer for alleged use of excessive force and arbitrator found that allegation unproved, court upheld award ordering reinstatement, as it was bound by arbitrator's finding). See *Vong Oung*, 72 Mass. App. Ct. at 708. Contrast *Geller*, 435 Mass. at 225, 231 (Cordy, J., concurring) (arbitration award reinstating teacher discharged under G. L. c. 71, § 42, for "conduct unbecoming a teacher" should be vacated where arbitrator "found facts and described those facts in a manner that clearly establishes . . . 'conduct unbecoming a teacher' ").[11]

*Conclusion.* The order of the Superior Court vacating the arbitrator's award is vacated. The case is remanded to the Superior Court for entry of an order confirming the award.[12]

*So ordered.*

---

[11]We address briefly Robishaw's claim that the judge erred in relying on his personal assessment of the audiotape of her SPEAK test. The judge stated the following in a footnote to his decision: "I have listened to the test audiotape of Ms. Robishaw; I find her ability to speak comprehensible English almost completely non-existent. Further, I respectfully request that any reviewing court listen to this tape. The test tape is attached to this decision and specifically incorporated by reference."

Given the restricted scope of a court's review of an arbitral decision, the judge should not have undertaken what in effect was an independent, de novo evaluation of the evidence before the arbitrator. As the reviewing court, we are not in a position to grant the judge's request.

[12]We decline to grant Robishaw's passing request for fees and costs pursuant to G. L. c. 150C, § 13 ("Upon the granting of an order confirming, modifying or correcting an award, judgment or decree shall be entered in conformity therewith and shall be enforced as any other judgment or decree. Costs of the application and of the proceedings subsequent thereto, and disbursements in connection therewith may be awarded by the court"). Robishaw may pursue such a request in the Superior Court.