Lenk, J.
(dissenting). The arbitrator’s decision, fairly read, reflects his conclusion that the plaintiff, the school committee of Lexington, did not carry its burden of proving that the defendant, Mark Zagaeski, engaged in the serious misconduct necessary to establish “conduct unbecoming a teacher,” one of six enumerated grounds on which a teacher with professional status can be dismissed under G. L. c. 71, § 42. Instead, based on all of the evidence adduced at the arbitration hearing, he determined that Zagaeski’s isolated episode of inappropriate behavior, while fitting nominally within that statutory category, was only minor in nature. This was a determination well within the scope of the arbitrator’s authority. Hence, I respectfully dissent, parting company as I do with the court’s independent assessment of the facts as found, its determination that the conduct at issue could not be deemed anything other than the requisite serious misconduct warranting dismissal, and its conclusion that, by reinstating Zagaeski, the arbitrator exceeded the scope of his authority. To the extent that the arbitrator imposed alternative discipline upon Zagaeski, however, I agree that he exceeded the scope of his authority. While the school authorities did not satisfy the statutory requirements when dismissing Zagaeski, it is solely within their purview whether other discipline instead should be imposed. I *123 would accordingly remand the matter. See School Dist. of Beverly v. Geller, 435 Mass. 223, 224 (2001) (Geller).
1. Statutory framework. General Laws c. 71, § 42, delineates the circumstances under which teachers who have attained professional status can be dismissed, as well as the scope of arbitrators’ review of such dismissals. Three paragraphs of the statute are particularly relevant here. I begin with an analysis of these paragraphs, informed by the somewhat unsettled case law construing them, including both Justice Cordy’s concurring opinion and Justice Cowin’s dissenting opinion in Geller, supra.[1] See Atwater v. Commissioner of Educ., 460 Mass. 844, 858 n.11 (2011).
General Laws c. 71, § 42, third par., enumerates six grounds on which a teacher with professional status may be dismissed: inefficiency, incompetency, incapacity, conduct unbecoming a teacher, insubordination, failure to satisfy performance standards, “or other just cause.” General Laws c. 71, § 42, fifth par., allocates to the district the burden of proving one of these grounds, and provides that, “[i]n determining whether the district has proven grounds for dismissal . . . , the arbitrator shall consider the best interests of the pupils in the district and the need for elevation of performance standards.”
If, in making such a determination, the arbitrator concludes that the district failed to carry its burden of proving an enumerated ground for dismissal, thereby rendering the dismissal “improper under the standards set forth in [G. L. c. 71, § 42,]” the sixth paragraph of the statute authorizes the arbitrator to award certain remedies to the teacher, namely, “back pay, benefits, reinstatement, and any other appropriate non-financial relief or any combination thereof.”[2]
As the court recognizes, the question regarding an arbitrator’s authority to reinstate a teacher who has been found to have engaged in conduct only nominally constituting an enumerated *124 ground for dismissal remains unresolved after Geller, supra. This reflects in no small measure the deep division in the Geller court as to the arbitrator’s proper role, represented by Justice Cordy’s and Justice Cowin’s opposing opinions. Although neither opinion is entirely consonant with my own view of the statute, both recognize, as I do, that the school district does not satisfy its burden of proving the propriety of the discipline imposed simply by showing facts that could conceivably amount to an enumerated ground for dismissal, without regard to the gravity of the act said to have occurred. Rather, under both Justice Cordy’s and Justice Cowin’s interpretations of the statute, the arbitrator is assigned the duty to determine whether the facts adduced in fact establish “serious misconduct” warranting dismissal on an enumerated ground. See Geller, supra at 231 n.7 (Cordy, J., concurring); id. at 241 (Cowin, J., dissenting). In other words, not all conduct that a school district may see fit to characterize as constituting an enumerated ground for dismissal will in fact rise to the level of serious misconduct that the Legislature envisioned would justify terminating a teacher who has attained professional status. It is the statutorily appointed role of the arbitrator to determine whether proven conduct does indeed rise to that level.
Indeed, that only “serious misconduct” will constitute an enumerated ground for dismissal is implied by the Legislature’s insertion, in the 1993 amendment, of a new category of “other just cause,” and its simultaneous deletion of “other good cause” as a ground for dismissal. See St. 1993, c. 71, § 44. As Justice Cordy observed in Geller, supra at 233 n.9, “[i]t is reasonable ... to conclude from the substitution of the word ‘just’ for ‘good’ that the Legislature intended to limit the broad range of conduct that had previously been considered as warranting dismissal in this catchall category, to serious misconduct.”[3]
*125 According to Justice Cordy’s view, however, once an arbitrator determines that a school district has proved “serious misconduct” amounting to an enumerated ground for dismissal, “the arbitrator does not have the authority to judge whether discharge is an excessive penalty for the violation committed.” Id. at 232 (Cordy, J., concurring). The arbitrator is “preclude[d]... from conducting a further ‘just cause’ analysis (e.g., weighing the teacher’s prior record against the misconduct for the purpose of justifying a different sanction) once he has found that one of the enumerated grounds for dismissal has been proved.” Id. at 234.
Justice Cowin, on the other hand, would have concluded that the statute authorizes an arbitrator to determine “both whether the grounds [for dismissal] alleged by the school district have occurred and, if so, whether such grounds warrant dismissal.” Id. at 241 (Cowin, J., dissenting). According to Justice Cowin, assessing whether the proven grounds warrant dismissal, or merely a less severe penalty, is not only within the arbitrator’s discretion, but required by the statutory directive that arbitrators consider “the best interests of the pupils in the district and the need for elevation of performance standards.” See G. L. c. 71, § 42, fifth par.; Geller, supra at 242-243 (Cowin, J., dissenting).
I agree with Justice Co win that G. L. c. 71, § 42, authorizes an arbitrator to assess whether the facts found warrant dismissal. In my view, it is within the scope of an arbitrator’s authority to determine both whether the conduct alleged by the school district in fact occurred, and, if it did, to decide whether such conduct “r[o]se to the level of [serious] misconduct contemplated by the statute as a ground for dismissal.” Geller, supra at 231 n.7 (Cordy, J., concurring). In performing the latter task of determining whether the district has proved grounds for dismissal, the statute requires the arbitrator to take into account “the best interests of the pupils in the district and the need for elevation of performance standards.” G. L. c. 71, § 42, fifth par.
The Legislature has provided for meaningful review by accredited professional arbitrators, see G. L. c. 71, § 42, fourth par., of *126 decisions made by school authorities to terminate teachers with professional status. This review is to assure that such decisions are based only on the serious misconduct that the statute details and, of necessity, encompasses both a determination of what occurred and a contextualized assessment of its gravity. The credentialed arbitrator is thus tasked not only with finding facts, but also with weighing those facts in conjunction with the mandatory student-interest and performance criteria, see G. L. c. 71, § 42, fifth par., to ascertain whether dismissal is warranted. An arbitrator who does this, and concludes that dismissal was not in fact substantiated, does not thereby overstep his bounds and usurp the role of school authorities. Rather, in so doing, the arbitrator fulfils his or her statutorily mandated duty of discerning whether the district sustained its burden of proving an enumerated ground for dismissal.[4]
Unlike Justice Cowin, however, I do not believe that the statute empowers arbitrators to impose alternative penalties on teachers, short of dismissal, that the arbitrator perceives to be more proportional to the severity of the misconduct he or she determined to have occurred. The sixth paragraph of the statute sets out the actions that arbitrators are authorized to take if they conclude that dismissal was “improper.” Those actions are remedial in nature, and are limited to awarding “back pay, benefits, reinstatement, and any other appropriate non-financial relief or any combination thereof’; the statute makes no express provision for the exercise of an arbitrator’s own judgment in choosing an ostensibly fair punishment. See G. L. c. 71, § 42, sixth par. The statute thus contemplates that an arbitration hearing will have one of two outcomes: either the arbitrator will determine that the district carried its burden, upholding its dismissal decision, or the arbitrator will find that the district did not carry its burden, reversing the district’s decision and awarding the teacher some form of relief. Should the school district’s dismissal decision be reversed, it remains solely within the purview of the district to determine *127 whether other discipline should then be imposed. See G. L. c. 71, § 42D.
In sum, I believe that it is the proper function of the arbitrator to find and weigh the facts, and subsequently either to reverse or to uphold a school district’s dismissal decision, but not to reduce the punishment imposed by the school. I now turn to a discussion whether the arbitrator here acted within the scope of his authority.
2. Arbitrator’s finding that Zagaeski committed “nominal” misconduct. In substantial reliance on footnote 7 of Justice Cordy’s concurring opinion in Geller, supra, the arbitrator found, based on the undisputed facts,[5] that the school district did not meet its burden of proving an enumerated ground for dismissal. Footnote 7 states,
“We note that the arbitrator found [the teacher’s] actions to constitute serious misconduct (‘totally inappropriate,’ ‘unacceptable,’ which ‘cannot be condoned’), a finding consistent with the evidence adduced at the arbitration hearing. This is not the case of an arbitrator finding a teacher to have engaged in minor misconduct that, however, nominally fit within a category on which dismissal could be based. In such circumstances, an arbitrator’s finding that the conduct did not rise to the level of misconduct contemplated by the statute as a ground for dismissal is one that would likely lie within the scope of his authority.”
Geller, supra at 231 n.7 (Cordy, J., concurring). The arbitrator quoted this footnote in its entirety and used it to frame his discussion of the import of Zagaeski’s comments. At the outset of his opinion, the arbitrator set forth a standard of review that incorporated language from this footnote, noting that both parties’ briefs cited that standard as governing the matter before *128 him.[6]
The arbitrator began his analysis by noting, rightly, that Zagaeski’s comments to the student regarding trading sexual favors for grades “obviously were inappropriate if taken literally” and were inconsistent with the school district’s policy against sexual harassment. And, indeed, it goes without saying that any insinuation that good grades are available for barter, particularly in exchange for sexual favors, would be wholly improper and have no place in the classroom.
But the arbitrator went on to make nuanced findings that situated the exchange within the context of the “obviously absurd joke” that the student had made to Zagaeski several days before about paying him for a better grade, and another student’s comment about sexual favors, to which Zagaeski had responded, “Don’t be ridiculous.” When the student again reiterated her “ridiculous request” a couple days later, Zagaeski “responded with a joking comment of his own,” as a way of referring to the recent exchange, something he considered to be “like an inside joke” with the student.
Given the jesting context in which the remarks were made, Zagaeski’s lack of actual intent to solicit sexual favors from the student, and the one-time nature of his behavior, the arbitrator determined that Zagaeski’s words essentially amounted to “one ill-advised set of interrelated, joking comments, made in response to ill-advised jokes initiated by his students,” and therefore only “nominally” fit within the category of conduct unbecoming a teacher. However, the arbitrator did not, as the court states, conclude that the school district had carried its burden of establishing one of the six enumerated grounds for dismissal. To the *129 contrary, the arbitrator concluded that, “[gjiven the relatively minor, and isolated character of Dr. Zagaeski’s misconduct, and his proven excellence as a teacher over the course of his decade of work in the Lexington Public Schools, the district has not proven grounds for dismissal . . .” (emphasis supplied). As the Superior Court judge observed, “[tjhe arbitrator’s findings regarding Zagaeski’s conduct appear to fit precisely within the scenario set out by Justice Cordy in footnote 7 of [Geller, supra].”[7]
The court acknowledges that this question, regarding an arbitrator’s authority to reinstate a teacher after finding that he committed only nominal misconduct, was left open by Geller, supra, but does not provide a direct answer. It instead engages in its own assessment of the facts and concludes that, notwithstanding the arbitrator’s determination that Zagaeski engaged in only nominal and isolated misconduct, it is not possible that the conduct at issue was anything other than serious, and, as such, the arbitrator acted outside of his authority in “adjusting” the school’s disciplinary decision. In so doing, the court inappropriately substitutes its own judgment for that of the arbitrator.
The court appears to share the school committee’s conviction that Zagaeski’s very utterance of the words to the student itself suffices to establish serious misconduct. But words alone are only a piece of human communication. Words shorn of context, taken only literally, are at a far remove from language embedded in circumstance. In any attempt to understand an event after the fact, establishing who said what generally will only begin to reveal what actually happened. Indeed, determining what actually happened, and the gravity of what actually happened, is precisely what this arbitrator was called upon to do and did. It is not for us to substitute our view for his.
Given my view that the statute authorizes the arbitrator to assess whether the facts as found warrant dismissal, and keeping in mind the “well-settled principle of law that arbitration awards *130 are subject to a narrow scope of review,” School Comm. of Chicopee v. Chicopee Educ. Ass’n, 80 Mass. App. Ct. 357, 364 (2011), I cannot accept the court’s analysis or conclusion in this regard.[8] I would instead squarely hold that where, as here, an arbitrator determines that the misconduct at issue was of a minor or nominal nature and, as such, did not constitute the serious misconduct necessary to satisfy an enumerated ground for dismissal, he acts well within the scope of his authority when concluding that the district has not sustained its burden of proving grounds for dismissal. See G. L. c. 71, § 42, fifth par.
Far from an arbitrary substitution of the arbitrator’s own judgment for that of the school district, such a determination amounts to a conclusion that the dismissal was “improper,” as per G. L. c. 71, § 42, sixth par. Upon such a finding of impropriety, the arbitrator is empowered to “award back pay, benefits, reinstatement, and any other appropriate non-financial relief or any combination thereof.” G. L. c. 71, § 42, sixth par. Thus, I believe that the arbitrator here did not exceed his authority in reinstating Zagaeski, particularly in light of his clear reliance on footnote 7 of Justice Cordy’s concurrence in Geller, supra, which essentially provided a roadmap for his decision. I would therefore *131 leave intact the reinstatement award here.[9]
3. Arbitrator’s consideration of “best interests of the pupils in the district and the need to elevate performance standards.” General Laws c. 71, § 42, fifth par., instructs arbitrators to “consider the best interests of the pupils in the district and the need for elevation of performance standards” in determining whether the school district has proved grounds for dismissal. The court decouples this consideration into two separate criteria, applicable to different enumerated grounds for dismissal, in a manner that I believe is not supported by the statutory language and will prove unworkable in practice.
The court breaks the six enumerated grounds warranting dismissal, set forth in G. L. c. 71, § 42, third par., into two categories of misconduct, namely, “performance-based” misconduct on the one hand, and misconduct that “jeopardize[s] the safety or self-esteem of students in the classroom setting” on the other. Ante at 120-121. The category of misconduct at issue, the court holds, determines whether the arbitrator is to consider “the need to raise performance standards,” or “the best interests of the pupils primarily in light of the pupils’ interest in a safe learning environment” in determining whether the school district has proved grounds for dismissal. Ante at 121. The court concludes that the arbitrator here exceeded his authority by applying the former criterion, where the conduct at issue fell into a category demanding application of the latter.
By dividing the six enumerated grounds into two classes of misconduct, the court creates an artificial distinction that is not borne out by the statute. The statute simply enumerates the grounds warranting dismissal in one unbroken list, and provides generally that “the arbitrator shall consider the best interests of the pupils in the district and the need for elevation of performance standards.” See G. L. c. 71, § 42, third & fifth pars. It does not direct arbitrators to cabin their consideration of these factors depending on the type of misconduct determined to have occurred.
*132 Moreover, it is far from clear that, in practice, “performance-based” conduct is readily distinguishable from misconduct that “has jeopardized the safety or self-esteem of students in the classroom setting.” Neither is it evident that misconduct grouped in the latter category, including misconduct bearing the somewhat indeterminate label of “conduct unbecoming a teacher,” will in fact jeopardize students in such a manner.[10]
In any event, the court’s conclusion that the arbitrator here put undue weight on “the pupils’ interest in the academic success of their school” simply misconstrues the arbitrator’s findings. Ante at 121. As an initial matter, the arbitrator’s weighing of the mandatory student-interest and performance criteria was not necessary to his decision, as he found that the school district had not sustained its burden of proving an enumerated ground for dismissal because the misconduct at issue was minor, not serious. After so finding, the arbitrator went on to state that, “[ejven if Dr. Zagaeski’s words toward [the student] were characterized as serious rather than a minor act of conduct unbecoming a teacher (which is not the view of this arbitrator), ... the district has not proven grounds for dismissal because the best interests of the pupils in the district and the need for elevation of performance *133 standards warrant the retention of Dr. Zagaeski.”
Instead of “permitt[ing] the pupils’ interest in the academic success of their school to override their interest in a safe, supportive classroom environment,” as the court suggests, the arbitrator properly treated the statutory criteria as interconnected. The arbitrator noted the “rapport” that Zagaeski had developed with his students over the course of the school year, as well as the atmosphere of “mutual respect” that he had cultivated in his classroom, in part through the use of humor and a less hierarchical approach to teaching. Zagaeski “tried to create a culture of comfort in which the students would feel safe and at ease” and “developed a teaching style designed to meet the students at the level they understood, in an environment that made them comfortable and helped them to achieve academically.” This teaching style contributed to Zagaeski’s “record of impressive accomplishment in helping a relatively challenged group of students to achieve success.”
Therefore, in light of Zagaeski’s “proven excellence as a teacher over the course of his decade of work in the Lexington Public Schools,” the arbitrator concluded that “the best interests of the pupils and the need for elevation of performance standards warrant the retention of Dr. Zagaeski.” In so doing, the arbitrator acted within his authority by considering in an integrated manner the two factors that G. L. c. 71, § 42, fifth par., mandates be taken into account.
In sum, I would hold that the arbitrator was authorized to conclude, as he did, that Zagaeski had not engaged in the serious misconduct necessary in the first instance to establish the statutory ground of conduct unbecoming to a teacher, that consideration of the mandatory best-interest and performance factors led to the same result, and that the school district had therefore failed to carry its burden of proving a ground warranting dismissal. For these reasons, I respectfully dissent.

No opinion in School Dist. of Beverly v. Geller, 435 Mass. 223 (2001) (Geller), garnered a majority. Justice Cordy authored a concurring opinion, with whom Chief Justice Marshall and Justice Sosman joined. Justice Ireland wrote a separate opinion, concurring in the result, with which Justice Cordy also joined. Justice Cowin dissented, and was joined by Justice Greaney and Justice Spina.

The arbitrator may not, however, award “punitive, consequential, or nominal damages, or compensatory damages other than back pay, benefits or reinstatement.” G. L. c. 71, § 42, sixth par.

Although the court asserts that the purpose of the Education Reform Act of 1993 (Reform Act), which amended G. L. c. 71, § 42, was not to enhance the employment rights of public school teachers, ante at 115-116, there is also nothing to suggest that the amendment was intended to diminish the rights of teachers with professional status. If anything, insofar as the shift from a “good cause” to a “just cause” standard imposed a higher burden on schools, the Reform Act in fact provided greater protection to teachers with professional status, by limiting the circumstances under which they could be dismissed. See Geller, supra at 233 n.9 (Cordy, J., concurring), and cases cited (explaining that “good cause” had been understood to mean “any ground which is put forward [by the supervising authority] in good faith and which is not arbitrary, irrational, unreasonable, or irrelevant to the . . . task of building up and maintaining an *125 efficient school system,” whereas “just cause” suggests “substantial misconduct which adversely affects the public interest” [citations omitted]). Compare G. L. c. 71, § 42, as appearing in St. 1993, c. 71, § 44, with G. L. c. 71, § 42, as amended through St. 1988, c. 153, §§ 4-6.
Due regard for employment rights is hardly at odds with the stated purposes of the Reform Act to which the court refers, namely, to increase the accountability of educators and to improve the quality of education provided in public schools. See G. L. c. 69, § 1, as appearing in St. 1993, c. 71, § 27.

Of course, there may be situations in which an arbitrator’s reinstatement of a teacher, after finding that the school district had not sustained its burden, would violate public policy, an independent ground to vacate an arbitrator’s award. See Massachusetts Highway Dep’t v. American Fed’n of State, County & Mun. Employees, Council 93, 420 Mass. 13, 16-19 (1995). The court does not rely on public policy grounds here, and indeed, “[n]o public policy requires that a teacher be fired in these circumstances.” Geller, supra at 247 (Cowin, 1, dissenting).

Zagaeski was the only witness at the arbitration hearing; neither the seventeen year old female student who brought Zagaeski’s comments to the school’s attention nor other witnesses with firsthand knowledge of the underlying events testified. In addition to Zagaeski’s uncontradicted testimony (which “provided important context regarding what was going on and being said immediately before, during, and after he made the comments in question to the [seventeen] year old student,”) the arbitrator had before him a letter that Zagaeski had written during the investigation to the assistant superintendent as well as other statements he and his counsel made to the district’s representatives during that period. The arbitrator stated, “To meet its burden of persuasion, the school district in this proceeding has relied entirely upon what it asserts are facts as admitted to by Dr. Zagaeski himself.”

Although “the parties [cannot] properly authorize the arbitrator to act beyond his statutory authority in any event,” Getter, supra at 230 n.5 (Cordy, J., concurring), the standard of review that the arbitrator set forth nonetheless sheds light on the manner in which he undertook to analyze the facts at hand. According to that standard,
“[I]f the arbitrator finds that the school district has proven one of the six specifically listed grounds for dismissal, and has proven that the misconduct was serious rather than only minor in nature, then the arbitrator must uphold the termination decision, unless the arbitrator makes specific and detailed findings that the ‘best interest of the pupils in the district . . . ’ warrant the retention of the teacher notwithstanding the serious misconduct which has occurred.” (Emphasis supplied.)

Even if the arbitrator misapprehended the holding of Geller, supra, his interpretation — which the Superior Court judge tracked — was a reasonable one, particularly given the fractured nature of the court’s opinion in that case. And even assuming that his interpretation was erroneous, “[ajbsent proof of one of the grounds specified in G. L. c. 150C, § 11 (a), a reviewing court is ‘strictly bound by the arbitrator’s factual findings and conclusions of law, even if they are in error.’ ” Atwater v. Commissioner of Educ., 460 Mass. 844, 848 (2011), quoting School Comm. of Lowell v. Robishaw, 456 Mass. 653, 660 (2010).

Although arbitrators’ factual findings are “not open for our review,” School Comm. of Lowell v. Robishaw, supra at 664, the arbitrator’s determination here that Zagaeski’s isolated instance of improper joking with a student constituted minor misconduct, only nominally “conduct unbecoming a teacher,” is, in any event, supported by the record, particularly when compared to conduct that has been deemed to fit the rubric of conduct unbecoming a teacher in other cases. For example, in Atwater v. Commissioner of Educ., supra at 849-850, the arbitrator found that the teacher invited a student to his house and while there, “inappropriately touched [her], touching her back, reaching down her shirt, and touching her buttocks in a sexual manner as well as hugging the student in an attempt to restrain her from leaving.” In addition, the teacher “made numerous attempts" to contact the student via electronic mail and telephone, through her friends, and by following her vehicle and visiting her home, which the arbitrator-labeled “serious” misconduct. Id. at 850, 852.
Similarly, in Geller, supra at 226-227, the arbitrator found that the teacher, who had received a warning from school authorities prior to his dismissal, engaged in “unacceptable” conduct over the course of seven months, culminating in three separate incidents involving the use of physical force against students. Quite unlike here, the arbitrator in that case “found facts and described those facts in a manner that clearly established the teacher’s] conduct to be ‘conduct unbecoming a teacher.’ ” Id. at 231.
Thus, both these cases involved a pattern of serious misconduct over a prolonged period of time, distinguishable from the isolated and quite dissimilar nature of the misconduct at issue in this case.

Whether the arbitrator exceeded his authority in reinstating Zagaeski is the central issue that the parties dispute in the case, and, as I have explained, I would hold that he did not. Because, however, as discussed supra, I do not believe that the statute empowers arbitrators to impose alternative discipline short of dismissal, I would hold that the arbitrator lacked authority to order two days of unpaid suspension, and remand to the Superior Court for entry of an order that the arbitrator’s decision be revised accordingly.

Indeed, it is difficult to see how the conduct at issue in MacKenzie v. School Comm. of Ipswich, 342 Mass. 612, 616 (1961), which the court cites, ante at 114 n.10, 117 — a teacher’s muttering the words “son of a bitch” to the superintendent at a meeting of school personnel — “jeopardized the safety or self-esteem of students in the classroom setting.” In cases such as MacKenzie v. School Comm, of Ipswich, supra, it is not clear whether the court’s formulation directs arbitrators to consider “the need to raise performance standards” or “the best interests of the pupils primarily in light of the pupils’ interest in a safe learning environment.”
In any event, MacKenzie v. School Comm. of Ipswich, supra, was decided prior to the Legislature’s enactment of the Reform Act in 1993, which amended the statutory scheme governing the dismissal of teachers. See St. 1993, c. 71, § 44. Under the old version of the statute, teacher dismissal was measured against a “good cause” standard, rather than the “just cause” benchmark that currently prevails. Compare G. L. c. 71, § 42, as appearing in St. 1993, c. 71, § 44, with G. L. c. 71, § 42, as amended through St. 1988, c. 153, §§ 4-6. The court cites this case as providing an example of “conduct unbecoming a teacher” that has persisted through the amendment. Ante at 114 n.10. To my mind, however, the question whether the conduct at issue in the pre-amendment case of MacKenzie v. School Comm. of Ipswich, supra, would constitute “just cause” for dismissal under the amended version of G. L. c. 71, § 42, is not free from doubt. See Geller, supra at 233 n.9 (Cordy, I., concurring) (Legislature’s substitution of “just cause” for “good cause” demonstrates intent to restrict conduct justifying dismissal to “serious misconduct”).