NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-970

NORMAN DESTREMPE

vs.

SCHOOL COMMITTEE OF WATERTOWN.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, Norman Destrempe, appeals from a judgment of the Superior Court confirming an arbitration award in favor of the defendant, the school committee of the town of Watertown (town).  That arbitration award upheld the plaintiff's termination from employment as a teacher.  The plaintiff argues that the judge should have vacated the award because the arbitrator acted beyond her authority by (1) failing to state in her decision what standard of proof she applied; (2) applying the incorrect rules of the American Arbitration Association (AAA); and (3) failing to disclose that she had participated in "women's marches of the Trump era," as she stated at a speech in June 2018.  We affirm.

Background. We summarize the facts found by the arbitrator, focusing on two incidents of the plaintiff's conduct on June 14 and September 7, 2018, as to which the arbitrator found that the town met its burden of proof.[1]

The plaintiff was a special education teacher in the Watertown public schools for nineteen years. On June 14, 2018, the plaintiff attended a professional development workshop at Watertown high school. During a presentation by an outside consultant, the plaintiff sat at a table with four other teachers, one of whom was E.M. On the table were candy bars provided by the presenter as snacks. During a break in the presentation, the plaintiff picked up one of the candy bars and used it to poke E.M. in the left breast, then laughed and walked away. The presenter noticed that E.M. was visibly upset. E.M. told a fellow teacher about the incident during the lunch break and told another teacher that evening. E.M. reported the incident to the human resources director, saying she just wanted the director to speak to the plaintiff and did not want "other repercussions." The plaintiff testified that the candy bar incident did not happen.

---

[1] In addition, the arbitrator described a June 2017 incident, stating that, "if true," the plaintiff's conduct violated the town's sexual harassment policy. As the judge noted, the arbitrator's findings never stated whether she credited that the June 2017 incident occurred. In those circumstances, we do not consider that incident.

The arbitrator found that the plaintiff "did poke [E.M.'s] breast with a candy bar."  In making that finding, the arbitrator credited E.M.'s testimony and other witnesses' testimony about E.M.'s contemporaneous reports of the incident. The arbitrator concluded that the plaintiff's actions constituted an "unwelcomed physical touching and therefore clearly violated the [town]'s sexual harassment policy."

On June 21, 2018, the town's assistant superintendent told the plaintiff not to have any contact with E.M. or anyone else involved in the investigation.  By letter dated June 28, 2018, the superintendent informed the plaintiff of her intent to dismiss him from employment and placed him on administrative leave pending further investigation.

On September 7, 2018, E.M. received a Facebook notification that the plaintiff had "tagged" someone in a photograph on E.M.'s Facebook page.  The plaintiff admitted to having looked at E.M.'s Facebook page to collect information, but denied intentionally "tagging" the photo, claiming that his computer froze.  The arbitrator found that the plaintiff contacted E.M. in violation of the school district's directive not to do so. In making that finding, the arbitrator explicitly found "not credible" the plaintiff's testimony that he tagged the photo by mistake.  The arbitrator concluded that the plaintiff's conduct "was insubordinate because it was a knowing and willful

3

violation of the [town]'s 'no contact' directive and it was retaliatory because it would predictably intimidate, or at least upset, his accusers."

On October 3, 2018, the superintendent sent a revised notice of intent listing the September incident as an additional act of misconduct, constituting both "insubordination and conduct unbecoming a teacher," that provided further "just cause" for the plaintiff's removal from his position. On November 30, 2018, the superintendent officially terminated the plaintiff's employment.

The plaintiff filed a petition for arbitration with the Massachusetts Department of Elementary and Secondary Education (DESE), requesting review of his dismissal. After the arbitrator affirmed his dismissal, the plaintiff filed a complaint in Superior Court seeking to vacate the arbitration award pursuant to G. L. c. 150C, § 11. A judge granted summary judgment in favor of the town and affirmed the arbitration award. The plaintiff appealed.

Discussion. 1. Standard of proof. The plaintiff argues that the arbitrator exceeded her authority under G. L. c. 71, § 42, because she did not apply "any evidentiary standard of proof" in deciding the case. He contends that the arbitrator

4

was required to apply a preponderance of the evidence standard but did not do so.[2]

Because the plaintiff had professional teacher status,[3] the town was prohibited from dismissing him except for reasons including "conduct unbecoming a teacher, insubordination . . . or other just cause." G. L. c. 71, § 42. Upon the plaintiff's petition for arbitration, the arbitrator was required to review the dismissal to determine whether the town "sustained its burden of proving by a preponderance of the evidence the particular reason cited for the [dismissal]." Superintendent-Director of Assabet Valley Regional Vocational Sch. Dist. v. Speicher, 469 Mass. 633, 634 (2014) (Speicher) (interpreting teacher suspension statute, G. L. c. 71, § 42D, which applies same standard of review as § 42).

In reviewing the arbitrator's award pursuant to G. L. c. 150C, § 11, the judge was "strictly bound by [the] arbitrator's factual findings and conclusions of law, even if they are in error." School Comm. of Lexington v. Zagaeski, 469

---

[2] In his complaint, the plaintiff asserted that the arbitrator should have applied a "clear and convincing evidence" or "substantial evidence" standard. He does not make those claims on appeal, and so we do not consider them.

[3] The plaintiff served as a teacher in the Watertown public schools for at least the previous three consecutive school years, qualifying him as a professional teacher for purposes of G. L. c. 71, § 42. See G. L. c. 71, § 41.

5

Mass. 104, 110 (2014), quoting School Comm. of Lowell v. Robishaw, 456 Mass. 653, 660 (2010). "If the arbitrator applied an incorrect standard of review, that error generally is not reviewable." Speicher, 469 Mass. at 639. For that reason alone, the plaintiff's argument is unavailing.

Even if we were to review for error in the arbitrator's application of the evidentiary standard of proof, we would discern none. The judge concluded that the arbitrator's findings as to the June 14 and September 7 incidents comported with the preponderance of the evidence standard. We agree. On page three of her fifty-six page memorandum sustaining the plaintiff's dismissal, the arbitrator quoted from the town's notice of intent to dismiss the plaintiff, which stated that the town's findings were "based on the preponderance of the evidence." On page forty-one, the arbitrator concluded that as to certain other alleged misconduct by the plaintiff, the town "failed to satisfy its burden . . . by a preponderance of the evidence." As to the June 14 incident, the arbitrator found that E.M. was "very likely telling the truth," and as to the September 7 incident, the arbitrator found that the plaintiff's testimony was "not credible." Implicit in those findings was the arbitrator's application of the preponderance of the evidence standard. The content of the arbitrator's decision "shows that, as implicated by the parties' arguments," she

6

applied the correct legal standard and "properly considered, as required by the statute, whether the district . . . satisfied its burden of proof."  Atwater v. Commissioner of Educ., 460 Mass. 844, 858 (2011).

2.  Applicable rules.  The plaintiff argues that the arbitrator also exceeded her authority by applying the AAA's Labor Arbitration Rules (Labor Rules) instead of its Employment Arbitration Rules and Mediation Procedures (Employment Rules).

On February 1, 2019, in response to the plaintiff's petition for arbitration, the DESE commissioner wrote to the plaintiff's counsel that "the arbitration process will be governed by the AAA's Labor Arbitration Rules."  After the plaintiff's counsel argued at a prehearing conference that the Employment Rules should apply, the arbitrator sought memoranda from the parties on the issue, and then ruled that the Labor Rules applied.

General Laws c. 71, § 42 requires arbitrators to review the dismissal of teachers with professional teacher status "in accordance with the rules of the [AAA]."  When that statute was enacted in 1993, only the Labor Rules existed; the AAA did not promulgate the Employment Rules until June 1, 1996.  See American Arbitration Association, Employment Arbitration Rules and Mediation Procedures, at 7 (as amended Nov. 1, 2009), http://www.adr.org/sites/default/files/EmploymentRules_Web_

7

2.pdf.  Therefore, the arbitrator concluded that the "rules" referred to in § 42 meant the Labor Rules.  The judge agreed with that analysis, concluding that "[t]o hold otherwise would be inconsistent with established principles of statutory construction and interpretation."  We concur.  See EMC Corp. v. Commissioner of Revenue, 433 Mass. 568, 571 (2001) ("Statutes are to be construed in the light of the preexisting common and statutory law . . . .  It is not to be lightly supposed that radical changes in the law were intended where not plainly expressed" [citation omitted]).

3.  Arbitrator's purported bias against plaintiff.  In opposition to the town's motion for summary judgment, the plaintiff argued that the arbitrator's March 2021 decision should be set aside because the arbitrator was biased against the plaintiff.  The plaintiff produced a video available online of a June 2018 speech in which the arbitrator, in accepting an award, commented that she had been "among the throngs in . . . the women's marches of the Trump era."  The plaintiff argues that the arbitrator improperly failed to disclose to the parties in advance of the arbitration that she had participated in "women's marches."  The plaintiff's claim is unavailing.

Pursuant to G. L. c. 150C, § 11 (a) (2), a reviewing court must vacate an arbitration award if there was "evident partiality" by an arbitrator.  "Evident partiality is more than

8

just the appearance of possible bias.  Rather, evident partiality means a situation in which a reasonable person would have to conclude that an arbitrator was partial to one party to an arbitration" (quotation and citation omitted).  JCI Communications, Inc. v. International Bhd. of Elec. Workers, Local 103, 324 F.3d 42, 51 (1st Cir. 2003) (construing similar language in 9 U.S.C. § 10[a][2]).  There are several factors helpful for determining whether there was evident partiality; most involve analyzing whether the arbitrator had a prior relationship with one of the parties or a personal interest in the proceedings.  UBS Fin. Servs. v. Asociación de Empleados del Estado Libre Asociado de Puerto Rico, 997 F.3d 15, 20-21 (1st Cir. 2021) (construing similar language in 9 U.S.C. § 10[a][2]).  See Bernstein v. Gramercy Mills Inc., 16 Mass. App. Ct. 403, 411-412 (1983).  The plaintiff does not allege that the arbitrator in this case had a personal interest in the proceedings, nor a prior connection with either of the parties.  We conclude that her participation in women's marches does not constitute "evident partiality."

Nor does the arbitrator's participation in women's marches show her possible bias under the Labor Rules.  The Labor Rules require an arbitrator to "disclose to the AAA any circumstance likely to give rise to justifiable doubt as to the arbitrator's impartiality or independence, including any bias."  AAA Labor

Rules, § 15 Disclosure and Challenge Procedure (as amended July 1, 2013).  The AAA then must inform the parties of that circumstance.  Id.  We agree with the Superior Court judge that attendance at women's marches "does not imply that [the arbitrator] harbors a negative animus towards men" and raises no justifiable doubt about the arbitrator's impartiality.

Conclusion.  For these reasons, we conclude that the Superior Court judge correctly allowed summary judgment in favor of the town and correctly affirmed the arbitration award.[4]

Judgment affirmed.

By the Court (Rubin, Grant & Hershfang, JJ.[5]),

Clerk

Entered:  September 25, 2024.

---

[4] The town's request for costs, and the plaintiff's request for attorney's fees and costs are denied.

[5] The panelists are listed in order of seniority.

10